IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANGESCO L.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23 C 2852 |
| v. | ) | |
| | ) | Magistrate Judge |
| MARTIN J. O'MALLEY, | ) | Daniel P. McLaughlin |
| Commissioner of Social Security,[2] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Frangesco L.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [11] is denied, and the Commissioner's cross-motion for summary judgment [18] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Martin J. O'Malley has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

On April 29, 2019, Plaintiff filed a claim for DIB, alleging disability beginning the same date. Following a hearing, an Administrative Law Judge ("ALJ") issued a recommended unfavorable decision on November 10, 2021. The Social Security Administration Appeals Council then remanded the matter on March 30, 2022. The ALJ held a telephonic remand hearing on August 31, 2022, and all participants attended the hearing by telephone. Plaintiff appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On October 19, 2022, the ALJ again denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's October 19, 2022 decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

In the ALJ's October 19, 2022 decision, Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 29, 2019. At step two, the ALJ concluded that Plaintiff had the following

severe impairments: degenerative disc disease; seizure disorder; depression; and anxiety. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with the following additional limitations: can lift and/or carry up to 50 pounds occasionally and 25 pounds frequently, and has no limitations in total ability to sit, stand, or walk throughout an 8-hour workday; can occasionally climb ramps and stairs, and can occasionally stoop, kneel, crouch, and crawl, but can never balance or climb ladders, ropes, or scaffolds; is limited to working in non-hazardous environments, *i.e.*, no driving at work, operating moving machinery, working on ladders or at unprotected heights, and should avoid concentrated exposure to unguarded hazardous machinery; is limited to simple, routine tasks, work involving no more than simple decision making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment; ought not perform work which requires multitasking; ought not perform work which requires significant self direction; is precluded from work involving direct public service, in person or over the phone, although can tolerate brief and superficial interaction with the public which is incidental to his primary job duties; ought not work in crowded, hectic environments; and can tolerate brief and superficial interaction with co-workers and supervisors as is common in unskilled work, but is not to perform teamwork or tandem tasks.

At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a physical instructor. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps

4

one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for

5

every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Id.* at 1054 (citations and internal quotations omitted). Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

### III.   ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ erroneously determined that Plaintiff could sustain the exertional requirements of medium work; (2) the ALJ failed to account for the disabling physical and mental effects of Plaintiff's seizures; and (3) the ALJ failed to account for Plaintiff's non-exertional deficits within the context of a full-time work setting. Each of Plaintiff's arguments will be addressed below in turn.

6

### A.     <u>Plaintiff's Ability to Perform Medium Work</u>

The Court first notes that Plaintiff's entire brief largely amounts to a request that the Court reweigh the evidence. Indeed, Plaintiff begins his first argument by proclaiming that remand is appropriate because the ALJ's medium work RFC assessment is "inconsistent with the medical evidence of record." ([11] at 8.) Unfortunately for Plaintiff, reweighing the evidence is an endeavor this Court cannot undertake, so the Court must decline Plaintiff's repeated invitations to do so. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

In advancing his first argument, Plaintiff otherwise argues that the ALJ erroneously considered the opinions of the treating sources. ([11] at 8.) Because Plaintiff filed his claim in 2019, the ALJ was required to evaluate the medical opinion evidence under regulations applicable to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017). Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is instead required to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two

7

most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

> In his decision, the ALJ assessed the treating sources as follows:
>
> Treating sources have left substantially unexplained assessments of the claimant's functioning in their treatment notes. For example, in June 2020 treating sources said that he claimant "will avoid bending, lifting, and twisting activities," saying that the claimant should return "in four weeks for repeat assessment." All such assessments are not persuasive. These assertions are also not well supported. These statements are first not well explained. These conclusions additionally do not evidence consideration of Social Security's particular rules and regulations, including the Agency's duration requirement of lasting or being expected to last a continuous period of twelve months. Additionally, many of these terms are undefined, belying their specific supportability. Further, these statements do not indicate consideration of evidence provided, or generated, by all of the claimant's other sources. Finally, these statements are broadly inconsistent with the medical evidence of record, including notations of the claimant exhibiting substantially intact lumbar range of motion.

(R. 33 (citations omitted).

> The ALJ further explained:
>
> Treating sources in August 2020 said, in the context of assessed developmental delays and seizures, that the claimant is "an appropriate candidate for disability." That assertion is not persuasive. It is first not well supported. Although this assertion is supported by this writer's treating relationship with the claimant, the nonspecific nature of that conclusions belies its supportability. This statement is also not well explained. Moreover, that particular comment is an issues reserved to the Commissioner under 404.1520b(c). Also, this statement is not

8

> consistent with the medical evidence of record, including observations of the claimant revealing a normal fund of information. This statement is also not consistent with, for example, sources' aforementioned observations of the claimant revealing normal memory functioning

(*Id.* (citations omitted).)

In sum, the ALJ discounted the treating source statements and opinions because they were not well explained, unsupported by specific terminology, and inconsistent with the medical evidence of record. Given the ALJ's explicit rationales, the Court finds that the ALJ properly assessed and explicated supportability and consistency in discounting the treating source opinions. *See* 20 C.F.R. § 404.1520c(b)(2). The Court must decline Plaintiff's invitation to reweigh the evidence in relation to the treating source opinions. *See Gedatus*, 994 F.3d at 900.

Plaintiff next argues that the ALJ erroneously rejected the opinions of Plaintiff's treating orthopedist, Dr. Drake. ([11] at 9.) The ALJ assessed Dr. Drake's opinions as follows:

> The claimant's orthopedist, Gregory Drake, D.O., completed a Treating Physical Residual Functional Capacity form in June 2022 where he opined to work-related limitations, citing a diagnosis of lumbar spondylosis, lumbar degenerative disc disease, and chronic L2, L3, L4 compression fracture. . . . After review, I do not find Dr. Drake's opinion to be persuasive. Overall, Dr. Drake's opinion appears excessive when compared to his own treatment notes, which show that Dr. Drake had not seen the claimant in over 15 months at that time that he completed this form (last seen in January 2021, though some insurance issues were noted). Otherwise, Dr. Drake's treatment notes from the same time frame, in June 2022, show that the claimant's examination of the lumbar spine found normal lumbar lordosis and that there was no obvious wasting of the lower extremities. Also, the claimant's lumbar spine range of motion was normal in flexion, extension, bilateral bending, and rotation and he had a negative straight leg raise test, 5/5 motor strength, and normal sensory findings, though the gait pattern on

9

> the right was antalgic. Dr. Drake does not cite to the record for support of his findings. He references injection treatment, which was from over a year and a half prior to this form being completed, and pain management as needed. The record on the whole shows that the claimant's back treatment has been conservative. Also, Dr. Drake references imaging, but the recent imaging of the claimant's lumbar spine was indicative of no greater than moderate findings. Nonetheless, the residual functional capacity set forth herein considers the claimant's complaints of back pain in limiting him to a range of medium exertional level work with postural limitations.

(R. 33-34 (citations omitted).)

In sum, the ALJ discounted Dr. Drake's opinions because they were relatively extreme, inconsistent with the doctor's treating notes, inconsistent with Plaintiff's examinations, inconsistent with Plaintiff's course of treatment, and unsupported by citations. Given the ALJ's explicit rationales, the Court finds that the ALJ properly assessed and explicated supportability and consistency in discounting Dr. Drake's opinions. *See* 20 C.F.R. § 404.1520c(b)(2). The Court must again decline Plaintiff's invitation to reweigh the evidence in relation to Dr. Drake's opinions. *See Gedatus*, 994 F.3d at 900.

Plaintiff also contends that the ALJ was impermissibly "playing doctor." ([11] at 10.) The Court rejects that assertion. The ALJ reasonably considered and weighed the evidence in relation to the various medical opinions. *See Armstrong v. Barnhart*, 287 F. Supp. 2d 881, 886-87 (N.D. Ill. 2003) ("Our review of the record indicates that the ALJ was not 'playing doctor,' but performing his duty to consider and weigh the evidence."). Indeed, "comparing and weighing the different [medical] opinions differently based on whether they were supported by the medical record as a whole . . . is exactly what the ALJ is supposed to do." *Roy R. v. Kijakazi*, No. 10

10

CV 1687, 2022 WL 1185601, at *13 (N.D. Ill. Apr. 21, 2022) (citations omitted). That is what the ALJ did here.

Lastly, Plaintiff argues that the ALJ failed to properly support his finding that Plaintiff's subjective allegations were not fully corroborated. ([11] at 10.) The Court summarily rejects that contention. With respect to the ALJ's finding that Plaintiff's alleged symptoms were not fully credible, this Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). "[P]atently wrong . . . means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). Here, in his decision, the ALJ discussed and analyzed Plaintiff's alleged symptoms at length. (*See* R. 26-30.) The Court finds that the ALJ reasonably determined that Plaintiff's alleged symptoms were not fully corroborated. *See Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("Because the ALJ's weighing of [claimant's] reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either."); *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination was not 'patently wrong,' because she found [claimant] not credible for several reasons that were adequately supported by the record.") (citation omitted); *cf. Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and Lacher's daily activities did not corroborate his

11

subjective symptoms."). Plaintiff has not shown that the ALJ's evaluation of his subjective symptoms was "patently wrong," as was Plaintiff's burden. *See Horr v. Berryhill*, 743 F. App'x 16, 19–20 (7th Cir. 2018).

### B. The ALJ's Consideration of Plaintiff's Seizures

With respect to Plaintiff's seizures, Plaintiff first repeats his argument that the ALJ inappropriately discounted the opinions of the treating sources. ([11] at 12.) The Court has rejected that argument above. Plaintiff then raises another symptom-based argument, contending that the ALJ erred in finding that the evidence regarding Plaintiff's seizures was not consistent with his allegations. (*Id.* at 13.) The Court also rejects that argument. The ALJ provided an in-depth explanation for his finding that Plaintiff's alleged seizure activity was not fully corroborated. (R. 27-28.) *See Malone v. Berryhill*, No. 17 C 1953, 2018 WL 6528014, at *9 (N.D. Ill. Dec. 12, 2018) ("Malone claims the ALJ did not sufficiently explain why he did not credit Malone's testimony or Dr. Woodard's opinion regarding his seizures, but the ALJ explained how the other evidence in the record did not substantiate the severity of Malone's claimed seizure disorder, giving more weight to the evaluations of the state agency consultants and neurologist on the issue.").

### C. Plaintiff's Alleged Non-Exertional Deficits

In advancing his third argument, Plaintiff asserts that the ALJ inappropriately discounted the neuropsychological examination report of Dr. Crisanti. ([11] at 14.) The ALJ assessed Dr. Crisanti's opinions as follows:

> Lauren Crisanti, Ph.D., neuropsychological examiner, opined on the claimant's functioning in July 2020. Dr. Crisanti said that she

> recommends that the claimant have "indirect supervision." She also said that the claimant's profile was suggestive of limitations in functions such as reading. However, Dr. Crisanti's opinions are not persuasive. These statements are first only partially supported. These assertions are supported by testing by Dr. Crisanti. However, these conclusions are nonspecific, belying their supportability. These statements are additionally not well explained. These statements further do not evidence consideration of the claimant's whole instant documentation of record. It is noted that the claimant is able to go out alone, such as to attend medical appointments and to use public transportation, without any indication of a requirement for supervision. In addition, these conclusions are not consistent with the medical evidence of record, including descriptions of the claimant as "pleasant" and observations of the claimant having a normal fund of information and normal memory functioning. Nonetheless, it is noted that the residual functional capacity set forth herein includes fairly substantial mental limitations, including restricting the claimant to simple, routine tasks.

(R. 32-33 (citations omitted).)

In sum, the ALJ discounted Dr. Crisanti's opinions because they were lacking in specificity, not well explained, and inconsistent with the medical evidence of record. Given the ALJ's explicit rationales, the Court finds that the ALJ properly assessed and explicated supportability and consistency in discounting Dr. Crisanti's opinions. *See* 20 C.F.R. § 404.1520c(b)(2). The Court must yet again decline Plaintiff's invitation to reweigh the evidence in relation to Dr. Cristanti's opinions. *See Gedatus*, 994 F.3d at 900.

Finally, Plaintiff argues that the ALJ erroneously determined that Plaintiff's ability to perform activities of daily living suggested he could work full time. ([11] at 14.) Pertinent to Plaintiff's contention, the ALJ noted that Plaintiff's daily activities were inconsistent with a finding of disability. The ALJ noted that Plaintiff remained able to prepare meals, ride public transportation, shop in stores, and go out independently. (R. 30.) The Court finds no error in the ALJ's consideration of

13

Plaintiff's daily activities. The ALJ did not improperly equate Plaintiff's daily activities with an ability to work full time. Rather, the ALJ appropriately read into Plaintiff's relatively active lifestyle that his asserted impairments were not as severe as alleged. *See Darryl S. v. Kijakazi*, No. 22 C 3827, 2023 WL 3169617, at *4 (N.D. Ill. Apr. 28, 2023).

## **CONCLUSION**

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion for summary judgment [11] is denied, and the Commissioner's cross-motion for summary judgment [18] is granted.

**SO ORDERED.**　　　　　　　　　　　　**ENTERED:**

**DATE:　　January 16, 2025**　　　　　　_____
　　　　　　　　　　　　　　　　　　　　**HON. DANIEL P. McLAUGHLIN**
　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**